OPINIONS OF THE SUPREME COURT OF OHIO

**** SUBJECT TO FURTHER EDITING ****

The full texts of the opinions of the Supreme Court of Ohio are being transmitted electronically beginning May 27, 1992, pursuant to a pilot project implemented by Chief Justice Thomas J. Moyer.

Please call any errors to the attention of the Reporter's Office of the Supreme Court of Ohio.  Attention:  Walter S. Kobalka, Reporter, or Deborah J. Barrett, Administrative Assistant.  Tel.:  (614) 466-4961; in Ohio 1-800-826-9010. Your comments on this pilot project are also welcome.

NOTE:  Corrections may be made by the Supreme Court to the full texts of the opinions after they have been released electronically to the public.  The reader is therefore advised to check the bound volumes of Ohio St.3d published by West Publishing Company for the final versions of these opinions. The advance sheets to Ohio St.3d will also contain the volume and page numbers where the opinions will be found in the bound volumes of the Ohio Official Reports.

The State ex rel. Crabtree v. Bureau of Workers' Compensation. [Cite as State ex rel. Crabtree v. Ohio Bur. of Workers' Comp. (1994), *** Ohio St.3d ***.]

(No. 94-1319 -- Submitted November 30, 1994 -- Decided December 30, 1994.)

In Mandamus and Prohibition.

Relator-claimant Roger D. Crabtree was industrially injured on November 8, 1993 while working for Sauer Construction, Inc., a State Fund employer.  After his claim was allowed, Crabtree began receiving temporary total disability ("TTD") compensation based on reports from his chiropractor, Dr. Stephen Kincaid.

On April 7, 1994, Crabtree was examined by a Bureau of Workers' Compensation ("bureau") physician, Dr. Bernard Nolan. Nolan opined that Crabtree's allowed conditions prevented a return to his former position of employment.  On May 6, 1994, the bureau's Rehabilitation Division informed Crabtree that his rehabilitation file was being closed because "your Physician of Record does not feel you are stable enough for rehabilitation with a goal of returning to work."  In a May 17, 1994 supplement, Dr. Nolan wrote:

"I have reviewed this man's file and, based on his failure to participate in the recommended rehabilitation, it is my opinion that he has, at this time, reached maximum medical improvement."

Dr. Nolan's conclusion that Crabtree had maximally medically improved caused the bureau to terminate Crabtree's TTD compensation, pursuant to a new policy adopted by the bureau in the wake of the 1993 passage of Am. Sub. H.B. No. 107, a package of reforms of Ohio's workers' compensation system.  The bureau's "Due Process Policy and Guidelines," implemented after the effective date of Am. Sub. H.B. No.107, provides:

"IV. DISABILITY DETERMINATION NOTICES

"POLICY: Written notice will be provided to the parties of the claim when medical evidence is received (from other than the POR [Physician of Record]) indicating maximum medical improvement [MMI] may have been reached.  The notice will:

"--indicate possible termination of benefits due to MMI,

"--provide a copy of the medical evidence indicating MMI,

"--define maximum medical improvement,

"--provide an opportunity to submit additional information,

"--outline other benefits to which the IW [injured worker] may be entitled.

"V. RESPONSES TO THE DISABILITY DETERMINATION NOTICE:

"POLICY: The injured worker and the employer are allowed 21 days from the date of the Disability Determination Notice to submit relevant evidence regarding the proposal to terminate compensation benefits.  Any evidence received must be evaluated on its merits even if the evidence is received during the appeal period.  Corrected decisions can be issued during the Appeal period.  BWC does not have continuing jurisdiction after the Appeal period and can only issue amended orders if there is a fraud, a clear clerical error or if there are new and changed circumstances in the claim which could not have been known previously.

"VI. FINAL DECISIONS (ORDERS)

"POLICY:  The final BWC decision is always based upon the weight of the medical evidence on file.  Orders are issued after the parties to the claim have been provided an opportunity to submit relevant evidence.  The Order must always indicate the medical evidence/documentation which was relied upon in reaching the final decision. * * *

"VII. TERMINATING TEMPORARY TOTAL BENEFITS:

"POLICY:  Temporary Total benefits are terminated effective the date of the Order.  Overpayments which arise from internal delays should not be created."

Pursuant to that policy, the bureau wrote to Crabtree:

"BWC has received the enclosed medical report as a result of your recent medical examination which indicates that your condition has reached maximum medical improvement. * * * Under Ohio Workers' Compensation law (ORC Section 4123.56), this reason supports terminating your temporary total compensation.

"A copy of this letter and the specialist medical report has been sent to all parties, and to your physician of record. You and your physician may wish to submit additional medical evidence on this issue for consideration in our final decision.  Any additional evidence must be received within 21 calendar days from the date of this letter. * * *  This letter is your notice that BWC will evaluate your claim and in 21 calendar days issue an order that may terminate your temporary total compensation. * * *" (Emphasis sic.)

Crabtree responded with a letter from Dr. Kincaid that indicated:

"Based solely on the allowed back injury to the patient, I do not feel he has reached maximum medical improvement.  He continues to make slow, but steady progress.  I feel he remains temporary [sic] totally disabled for gainful employment.

"I believe there will be improvement with Chiropractic treatments and/or surgery, if that becomes necessary.  At this

point, I feel that Chiropractic treatments can provide improvement without surgery * * * ."

The bureau terminated Crabtree's TTD compensation without oral hearing. Crabtree has commenced an original action in mandamus and prohibition seeking to: (1) prohibit the bureau from continuing its termination policy, and (2) compel the reinstatement of his TTD benefits until a district hearing officer conducts a hearing and rules on the maximum medical improvement issue.

Stewart Jaffy & Associates Co., L.P.A., Stewart R. Jaffy and Marc J. Jaffy, for relator.

Lee I. Fisher, Attorney General, and Dennis L. Hufstader, Assistant Attorney General, for respondent.

Gallon & Takacs Co., L.P.A., and Theodore A. Bowman urging granting of the writ for amicus curiae, Ohio Academy of Trial Lawyers.

Pfeifer, J. Relator argues that the bureau policy at issue lacks statutory authority and is unconstitutional. Relator presents a compelling argument that the bureau's policy violates the Due Process Clause, Section 16, Article I, and the Equal Protection Clause, Section 2, Article I, of the Ohio Constitution because it denies State Fund claimants the oral pre-termination hearing before a district hearing officer that employees of self-insured employers receive. However, when a case can be decided on other than a constitutional basis, we are bound to do so. State ex rel. Hofstetter v. Kronk (1969), 20 Ohio St. 2d 117, 49 O.O.2d 440, 254 N.E.2d 15. We decide this case based upon statutory interpretation. The bureau's "Due Process Policy and Guidelines" is not statutorily supported, and we thus grant relator's requested writs.

R.C. 4121.39 sets forth the powers and duties of the bureau:

"The administrator of workers' compensation shall do all of the following:

"(A) Review and process all applications for claims;

"(B) Award compensation and make payment on all noncontested claims;

"(C) Make payment on orders of the industrial commission and district and staff hearing officers as provided in section 4123.511 of the Revised Code * * * ."

The limited power R.C. 4121.39 accords the bureau is consistently reflected in the remainder of the statutory framework of Ohio's workers' compensation system. The bureau's role is ministerial, not deliberative. The bureau gives way to the commission when a party contests an award, necessitating a weighing of evidence and a judgment. The bureau then makes the payments based upon the commission's judgments.

The bureau's duty under R.C. 4121.39(C) to "[m]ake payment on orders of the industrial commission and district and staff hearing officers" is consistent with the bureau's other ministerial functions. That statute gives the bureau the authority to terminate TTD compensation only in uncontested situations. See R.C. 4121.39(B).

The commission order, pursuant to R.C. 4121.39(C),

dictates the terms of TTD compensation. Where TTD compensation hinges on the satisfaction of certain conditions, it follows that the right to compensation ceases when those conditions are no longer met. If, for example, the order makes further TTD compensation contingent on proof of disability and no proof is forthcoming, the bureau cannot continue TTD compensation. This effectively constitutes a termination and is consistent with the limited authority of self-insured employers to terminate compensation under State ex rel. Jeep Corp. v. Indus. Comm. (1991), 62 Ohio St.3d 64, 577 N.E.2d 1095.

On the other hand, the bureau must pay TTD compensation if all conditions precedent are met. Thus, if the commission order makes payment contingent on proof of disability and the claimant tenders such evidence, the bureau must continue compensation regardless of the existence of contrary evidence. Conflicting evidence turns an established entitlement to TTD compensation into a dispute over TTD compensation, and it is at that point that the bureau's termination authority ends.

The present case involves a contested claim for TTD compensation. The bureau argues that R.C. 4123.511, read in pari materia with R.C. 4121.34, 4121.39, 4123.52 and 4123.56, demonstrates the bureau's power to terminate contested claims. However, our reading of those statutes yields a completely different conclusion. Most important, R.C. 4123.511 deals with the initial claims process, including the receipt and investigation of a new claim for compensation or benefits. R.C. 4123.511(A). R.C. 4123.511(B) grants the bureau the authority to allow or deny claims at that level, but the bureau's affirmative authority is limited to compensation requests that are made contemporaneously with a claimant's initial application to have his claim allowed. R.C. 4123.511 does not give the bureau jurisdiction to terminate ongoing TTD compensation if an eligibility dispute exists. Instead, disputed compensation issues must be heard by commission hearing officers.

R.C. 4121.34, 4121.39, 4123.52 and 4123.56 are consistent with that reading of the statute. R.C. 4121.34(B)(3) gives district hearing officers original jurisdiction over all contested matters arising under R.C. Chapter 4123.

The bureau correctly notes that R.C. 4121.39(A) directs the bureau to "[r]eview and process all applications for claims." "Review and process," however, does not equate to "affirmatively adjudicate" all applications for claims. To so hold would empower the bureau to adjudicate every workers' compensation issue raised, leaving the commission without purpose.

While R.C. 4123.52 bestows continuing jurisdiction on the commission and, since Am. Sub. H.B. No. 107, the bureau administrator, the commission's jurisdiction is of a much different character:

"The jurisdiction of the industrial commission and the authority of the administrator of workers' compensation over each case is continuing, and the commission may make such modification or change with respect to former findings or orders with respect thereto, as in its opinion is justified." (Emphasis added.) R.C. 4123.52.

While granting continuing jurisdiction to the bureau, at least in name, the General Assembly authorized only the commission to modify former findings or orders.

Finally, R.C. 4123.56(A)'s first paragraph, which deals with the substantive aspects of terminating TTD compensation, contains no reference to intervention or participation by the bureau. The bureau points to the language in the statute which states that "payment shall not be made * * * when the employee has reached the maximum medical improvement" to support its claim that it has authority to terminate TTD compensation. However, R.C. 4123.56 requires that contested TTD claims go to commission hearing and requires that compensation shall continue to be made while determination is pending, with four exceptions. R.C. 4123.56(A) reads, in relevant part:

"If the employer disputes the attending physician's report, payments may be terminated only upon application and hearing by a district hearing officer pursuant to division (C) of section 4123.511 of the Revised Code. Payments shall continue pending the determination of the matter, however payment shall not be made for the period when any employee has returned to work, when an employee's treating physician has made a written statement that the employee is capable of returning to his former position of employment, when work within the physical capabilities of the employee is made available by the employer or another employer, or when the employee has reached the maximum medical improvement."

The bureau may unilaterally terminate compensation under these four exceptions to continued payment only when there is, in essence, no remaining dispute, and no facts at issue. In the first instance, a person returns to work and the necessity of compensation is over. The second exception occurs when the claimant's own treating doctor states that he is able to return to work. The third exception occurs when the employer or another employer gives the employee work within his physical capabilities. Since the phrase "work within the physical capabilities of the employee is made available" is used in a conclusory manner, as if that issue has already been decided, the bureau may unilaterally terminate compensation under this exception only in cases where the issue is effectively decided, i.e., where the employee offers no conflicting evidence about whether he is physically able to perform the work offered. Likewise, the fourth exception, the one relevant to this case, comes into play "when the employee has reached the maximum medical improvement." It cannot be judged with the certainty implicit in the statute that the employee has reached that threshold until after the hearing officer has made his determination on that issue. Thus, the bureau may unilaterally terminate compensation under this exception only when there is no dispute as to whether the employee has reached maximum medical improvement.

Pursuant to the bureau's theory, R.C. 4123.56 would require the bureau to terminate TTD compensation any time that an employer submits evidence, no matter how flimsy, that challenged the existence of TTD. It is of little consolation to a claimant to have benefits belatedly reinstated should claimant's evidence subsequently prevail. Thus, the statute

can only mean that the bureau can terminate payments prior to a district hearing officer's determination only upon the uncontested existence of one of the four uncontested, disqualifying conditions.

"In order to obtain a writ of prohibition, relator must prove: (1) that the court or officer against whom the writ is sought is about to exercise judicial or quasi-judicial power, (2) that the exercise of that power is unauthorized by law, and (3) that denying a writ will result in injury for which no other adequate remedy exists in the ordinary course of law." State ex rel. Keenan v. Calabrese (1994), 69 Ohio St.3d 176, 178, 631 N.E.2d 119, 121. Crabtree seeks to discontinue the bureau's termination policy on behalf of himself and all other claimants. Since the bureau is exercising a power for which it does not have statutory authority, and since the normal appeals process is inadequate, the relator has satisfied the requirements for a writ of prohibition, and we therefore grant the requested relief.

Crabtree also requests a writ of mandamus to compel reinstatement of his TTD compensation pending adjudication of the issue of maximum medical improvement by a commission district hearing officer. In order to be entitled to a writ of mandamus, the relator must establish that he has a clear legal right to the relief prayed for, that respondent has a clear legal duty to perform the requested act, and that the relator has no plain and adequate remedy at law. State ex rel. Seikbert v. Wilkinson (1994), 69 Ohio St.3d 489, 633 N.E.2d 1128. Since we have already determined that the bureau has a clear legal duty to reinstate Crabtree's TTD compensation until a district hearing officer has determined the maximum medical improvement issue, and that the appeals process is inadequate, we hereby grant the writ.

Writs granted.

A.W. Sweeney, Resnick and F.E. Sweeney, JJ., concur.

Douglas, J., concurs separately.

Moyer, C.J., and Wright, J., dissent.

Douglas, J., concurring.    I concur in the well-reasoned opinion of Justice Pfeifer. I write separately to make one additional point.

R.C. 4121.31, in part, provides:

"The administrator of workers' compensation and the industrial commission jointly shall adopt rules covering the following general topics with respect to this chapter [4121] and Chapter 4123. of the Revised Code:

"* * *

"(C) All claims, whether of a state fund or self-insuring employer, be processed in an orderly, uniform, and timely fashion." (Emphasis added.)

Clearly, the respondent bureau (pursuant to its promulgated "policy") is not handling TTD disputes in a "uniform" fashion as required by the statute. This is so because state fund claimants are affected by the "policy" but employee-claimants of a self-insured employer are not. Really, given R.C. 4121.31, nothing more needs to be said.

Wright, J., dissenting.    I would deny both the writ of mandamus and the writ of prohibition, because I believe that

relator has adequate remedies at law.

With regard to relator's request for a writ of mandamus, relator exercised his right to appeal the bureau's decision within fourteen days to the Industrial Commission. If relator had obtained a favorable result upon appeal, his temporary total disability compensation would have been reinstated. However, the relator's administrative appeal is either being held in abeyance or has been dropped. A writ of mandamus is completely inappropriate given these circumstances.

With regard to relator's request for a writ of prohibition, relator has the right to challenge the bureau's policy concerning the termination of temporary total disability compensation by filing a declaratory judgment action in an appropriate court. Instead of following these adequate legal avenues, relator inappropriately requests this court to grant a writ of prohibition.

Accordingly, I respectfully dissent.

Moyer, C.J., concurs in the foregoing dissenting opinion.